THE STATE, EX REL. GEORGE T. WELCH, PROSECUTOR, v. THE PASSAIC HOSPITAL ASSOCIATION.

1. An irregular removal of a member of a board of governors of an association formed under the provisions of an act entitled "An act to provide for the incorporation of associations for the erection and maintenance of hospitals, infirmaries, orphanages, asylums and other charitable institutions," approved March 9th, 1877 (*Gen. Stat.*, p.

1686), will warrant the use of the writ of *mandamus* to restore him to his corporate rights in said board.

2. Before such member can be removed from his office, there must be an inquiry and a determination of the neglect of duties imposed upon such member by the constitution and by-laws of such association, and this inquiry and determination can only be made upon notice to him, and an opportunity for him to be heard in his defence.

On rule to show cause why *mandamus* should not issue.

Argued at February Term, 1896, before Justices LIPPIN-COTT and LUDLOW.

For the relator, *William W. Welch.*

The opinion of the court was delivered by

LIPPINCOTT, J. This is an application on rule to show cause why a peremptory writ of *mandamus* should not issue to restore George T. Welch, the relator, to his membership of the board of governors of the Passaic Hospital Association, from which it is contended that he was unlawfully expelled on January 27th, 1896. There is no dispute in relation to the validity of his original election to this board, nor that he was expelled at the meeting held on the above date.

From the evidence, which is undisputed, which has been placed before the court, it appears that the defendant was incorporated on June 17th, 1877, under the general act of the legislature entitled "An act to provide for the incorporation of associations for the erection and maintenance of hospitals, infirmaries, orphanages, asylums and other charitable institutions," approved March 9th, 1877. *Gen. Stat., p.* 1686.

This act provides for the election and creation of a board of governors to manage the property of the corporation and for the regulation and government of its affairs. Section 5 of this act provides, generally, that this board of governors shall be clothed with the power to make, alter and amend the by-laws, and also to provide for the classification and mode of increasing and perpetuating the governors or directors of the

association, and the mode of filling vacancies, and for removing any member from their number.

The relator was one of the original incorporators of the association and one of the original governors. The facts show that no charges of neglect of duty had ever been presented to the board of governors against the relator. In fact, the case shows that no charges whatever, up to the time of the meeting at which he had been expelled, had ever been presented against him, or that any conduct of his had ever been complained about.

The relator is a physician, and it appears that he is a member of the medical staff of another hospital, but neither in the statute under which the respondent is incorporated nor in its constitution or by-laws is there any provision rendering this fact inconsistent with the official position of the relator to this board of governors, or inconsistent with the performance of his duties as such member.

This matter had been discussed amongst the members of the board of governors, but no action had been taken upon the matter, except that at a meeting of November 25th, 1895, the secretary was directed to write to the relator, asking him if he desired to continue his interest in the association, and calling his attention to section 2 of article 5 of the constitution, which provides that " whenever any governor shall die, resign or refuse or neglect to act in or execute the office for which he was chosen, then the governors at their next monthly meeting after it shall have been ascertained and recorded in the book of minutes that the office is vacant, shall elect by ballot a member of this association to fill the vacancy." To this letter the relator replied that he had never had any intention of neglecting to perform his duties, that he was then and always had been willing to act in accordance with the constitution, to contribute his dues, and forward the interest of the association in any legitimate way to the best of his ability, and enclosed his dues for the year ending December 21st, 1895.

This constitutes the only action of the board of governors

in this matter previous to the meeting of January 27th, 1896. The usual notices of that meeting were sent out to the members of the board of governors, one of which was sent to the relator. The notice contained no reference to the character of the business to be considered at this meeting, except that it was to be a meeting for general business.

The relator, being a physician, had a call on that evening and was unable to attend. Without any charges being presented against the relator, and without any notice to him of their intended action and opportunity for hearing, the board of governors, upon motion, expelled him as a member of the board. The only reason given in the minutes of the meeting was, because of his neglect to execute the office to which he had been chosen, in accordance with section 2, article 5 of the constitution.

This section of the constitution expressly requires, before the membership can be declared vacant, that the neglect or other cause of removal must be ascertained and recorded in the book of minutes of the proceedings of the association.

The constitution of the association expressly requires that there shall be an inquiry and determination of the neglect before the forfeiture of membership can be declared.

Thus it will be seen that without notice to the relator, and without opportunity for him to be heard, there could be no ascertainment of neglect or other cause of removal. This determination must be judicial in its character, and upon notice to the relator, with an opportunity afforded to him to be heard in his defence. *Sibley* v. *Carteret Club*, 11 *Vroom* 295 ; *High Ex. Rem.*, § 294.

But if the constitution and by-laws were silent upon this subject and did not provide for an inquiry and determination, still these elements of judicial action would be absolutely necessary. He must have had notice, and must have been given an opportunity to be heard upon charges or complaint presented against him. His continued right of membership could not be forfeited, *ipso facto*, by his failure to attend a meeting or meetings of the board. Upon this subject of neg-

lect of duty there was no legal investigation and adjudication by the board of governors of this association, and the relator is entitled to be restored to the membership of the board from which he has been irregularly and illegally removed. *Zeliff v. Knights of Pythias,* 24 *Vroom* 536.

The evidence taken in this matter has been carefully examined, and the conclusion, without question, which is reached is that as it stands it is evident that the relator had neglected no duties whatever which he was called upon to perform as one of the members of this board, and that in defiance of any attempt to legally ascertain and determine whether he had so neglected his duties or not he was expelled.

There is no disputed fact whatever in this case, and when such a condition is found and the right is clear and indisputable, a peremptory writ should be issued in the first instance. *Mason v. Paterson,* 6 *Vroom* 190, 195; *Cleveland v. Board of Finance,* 9 *Id.* 259, 266.

A peremptory writ of *mandamus* will be allowed to reinstate and restore the relator as a member of the board of governors of the association until his right of membership has been legally and judicially determined.